Good morning. May it please the Court, I am Jennifer Garcia from the Federal Public Defender's Office for the District of Arizona, and I represent Mr. Schurz, the petitioner appellant in this matter. With the Court's indulgence, I'd like to briefly discuss one of the uncertified issues in this case first, and then go on to the certified issue regarding the ineffective assistance of counsel at sentencing. This Court ordered supplemental briefing on the second claim raised in our brief, which was the claim about Ake v. Oklahoma, the violation of Ake v. Oklahoma, when the trial court denied the motions that trial counsel made asking for expert assistance to use at the guilt phase of Mr. Schurz's trial. And I think when you look at the Arizona Supreme Court's opinion on the Ake claim, it's very clear that this — their decision constituted both an unreasonable application of Ake v. Arizona to the facts of this case and an unreasonable determination of the facts, because the — It wasn't clear to me. I'm going to start here. Okay. I think when you look at the reasoning of the Arizona Supreme Court, the Arizona Supreme Court, when you look at the Arizona Supreme Court's opinion on the Ake claim,  to the trial court on the part of Mr. Schurz, and ignored the remainder of the evidence that had been presented to the trial court to put them on notice that Mr. Schurz's mental condition was likely to be a significant factor at trial. There was evidence that — Is the mere notice somehow raised to substance? I don't think the notice itself, Judge, was enough to give — to give rise to the — to let the trial judge be on notice that this was likely to be a significant factor in Mr. Schurz's trial. But Dr. Potts's report, I think, made clear that he brought to counsel's attention that even though Mr. Schurz, in his opinion, was competent to stand trial, which is not an issue that we have taken up, that he noted that Mr. Schurz suffered from memory problems, possible drug and alcohol-induced blackouts, a possible undiagnosed seizure disorder with accompanying olfactory hallucinations, a recent incident of head trauma that he experienced problems after, and noted that there was the possibility of possible neurologic problems. And when you couple that with the motion, the original motion that counsel made for a Rule 11 prescreen, where he noted possible serious mental problems caused by alcoholism and other factors and Mr. Schurz's memory problems, and also the motion for a neurological exam that he filed, where he asked for a CAT scan, an EKG, or other appropriate tests to look at organic brain damage. And in that motion, he talked about Mr. Schurz's severe alcoholism, his memory loss, and other symptoms of brain damage, and then coupled that with his notice of defenses, which included intoxication, insanity, which is, of course, a required part of an 8 claim, and also three different kinds of lack of intent defenses. So all of those, I think, were more than adequate to put the trial court on notice that the mental condition of Mr. Schurz at the time of the crime was likely to be a significant factor here. What about all the things you said, and then at the end of that, Dr. Potts more or less says that it wasn't appropriate to have a motion for more extensive evaluation on competency. What do we make of that? Yes, Judge. As I mentioned, Dr. Potts focused on the question of competency, but a Rule 11 evaluation actually covers both the question of competency and the mental state at the time of the crime. And Dr. Potts really only talked about competence to stand trial, which, again, I don't think was at issue. I think Dr. Potts was correct that in his evaluation of Mr. Schurz that there did not appear to be problems with his present competency to assist counsel during the trial. It was the question of his mental state at the time of the crime that there were questions about, from between the drug and alcohol use and the memory problems and the head trauma and the possible organic brain damage and other neurologic issues. That was what put trial counsel on notice, that the mental condition at the time of the crime was likely to be a significant factor at trial. But as I read the report, it really doesn't indicate any brain dysfunction, does it? Well, Your Honor, Dr. Potts is not a neuropsych or a neurologist, so I don't think he did any kind of testing or had the knowledge at the time of that simple prescreen that he did pursuant to Rule 11.2 that would have allowed him to definitively diagnose brain damage or any other neurologic problems. A prescreen, it was generally, you know, just as an initial evaluation, it doesn't appear that Dr. Potts did any testing. He didn't do any interviews. He didn't have any supporting records. It was just an initial, they do an initial meeting with the client to see if a more full-blown evaluation is necessary. And Dr. Potts did not believe that it was necessary for purposes of competence, which he expressly states. But he pointed out several things that he thought were significant factors to defense counsel that, unfortunately, defense counsel couldn't follow up on because the trial court denied his motions for expert assistance. Well, but also, it seems to me that the AIC case is what I say it. The AIC case, there are different facts than in this case, dramatically different facts. The Supreme Court said in that case the sole defense was insanity because of the bizarre behavior before arraignment, just months after the offense. The trial court sua sponte had him examined. Then the state psychiatrist shortly thereafter found him to be incompetent. He was only competent six weeks later because he was heavily sedated. Multiple psychiatrists examined him and described the severity of his mental illness less than six months after the crime. That's putting forth all the facts in AIC. This seems to be a different case. I agree with you, Your Honor, that the facts of AIC indicate a very clear condition of insanity caused by, I believe he was schizophrenic or had some kind of psychotic disorder. And here, there's not any evidence in the record that Mr. Scherz had any kind of psychotic disorder or schizophrenia. The difference here is that under Arizona law at the time, there were two different ways insanity could be defined. It could include both that due to a mental disease or defect, Mr. Scherz was unable to tell the difference between right and wrong, but also that there was a mental disease or defect that affected his ability to know the nature and quality of his actions. And that would be the prong of the governing Arizona law at the time, that we would be arguing here, that due to the brain damage, coupled with the drug and alcohol abuse and whatever else, whatever other neurological problems were there, that Mr. Scherz had this. But you have to have a predicate that that is, that there's some reason to believe that that is an issue. And that part's reported. I mean, can we really say? We're reviewing under FPA, right? Can we really say that the Arizona Supreme Court was unreasonable in its application of AIC given what it had, what counsel presented? Yes, Your Honor. I think that between. How? Between the factors that Dr. Potts listed in his report and the independent avowals of counsel in the various motions he filed, that was certainly enough to put the trial court on notice that this would be a significant factor. Well, what were those avowals? About in ER 1223, which is the motion for examination of mental condition, where he talked about that there were possible serious mental problems, that he suspected organic brain damage. So this is before or after the Potts? These were before. Right. So this is. So in response to these things, the trial court appoints Dr. Potts. So everything that goes before that doesn't help, Your Honor. Because the trial court gave Petitioner counsel what counsel asked for, appointed Dr. Potts. What happened afterwards that helps you? Well, after Dr. Potts, this is an issue that's a little bit not clear from the record, but after Dr. Potts. Not clear doesn't help you, because it has to be clear. After Dr. Potts gave his report, defense counsel then moved for appointment of an expert to do a full-blown Rule 11 evaluation based on what Dr. Potts said, and the trial court denied that. Unfortunately, as we noted in the brief, we don't have a transcript of that. I would assume there was some argument on the motion, but unfortunately, a previous habeas counsel discovered. Did you have the motion itself? I don't think there was a paper motion filed. It's noted in the minute entry for the proceeding that day that defense counsel had made a motion for appointment of a full-blown Rule 11 evaluation. So the bottom line is, the bottom line is there's nothing except the Potts affidavit. Everything else you say, you said the Potts affidavit plus the representations of counsel. But the representations of counsel came before Potts. They were the basis for allowing the examination by Dr. Potts. After the Potts affidavit, all we have is that. We don't have a habeas counsel. We can speculate as to what happened, but speculation doesn't help you any. It's hard to say that the Arizona Supreme Court is unreasonable based on facts we don't have. I agree, Your Honor. So when you said the Potts affidavit and representations of counsel, you really just meant the Potts affidavit. There's nothing else. Not quite, Your Honor, because I think when you look at AIC, as Judge Smith had just pointed out, one of the factors that the AIC court considered were the representations counsel made regarding his interactions with the client. And here, when the trial counsel made the motion for the ---- I'm sorry. Well, counsel makes his presentation, and the court grants him what he asks for. Okay. We don't know what else he said, but it would be quite unreasonable for us to say then in ruling on this unknown motion for appointment of further counsel, we have to then read back to the presentation the counsel made in support of a motion that was granted. I don't see where we could do that. I think the difference is that counsel didn't only argue about Mr. Scherz's competence to stand trial in his motions for a Rule 11 evaluation. He also had asked for an evaluation regarding Mr. Scherz's mental condition at the time of the crime. It asked for both those things. So let me just make sure I got it right. Your position would be, having then seen Dr. Potts, he sees deficiencies, he then makes a motion, but the only thing we have as to what the basis for that might be is the minute order, no transcript, no substance. I would ---- No reconstruction. You don't have an affidavit from counsel saying this is what I argued, this is what happened. There's no attempt to do that. We would have to basically say we would tip the State court on the basis of a minute order, wouldn't we? Well, I think Dr. Potts's report would also be the basis for the decision. Because in Dr. Potts's report, which is part of the record, it was before the trial court, it was clearly before the Arizona Supreme Court, he lays out these different specific bases for defense counsel to question what Mr. Scherz's mental condition was at the time of the crime. And Dr. Potts was a court-appointed expert. His report went to the prosecution, the trial court, and the defense attorney. This is something that everybody would have been on notice were the different factors that Dr. Potts pointed out. If there are no further questions about this, I'd like to move to the IAC claim. I don't want to run out of time. Okay. Is that okay? In this case, there is a lengthy list of mitigation evidence that was never presented to the trial court at sentencing. And much of it is very compelling evidence, including important information about the extreme poverty and neglect that Mr. Scherz suffered growing up on the Gila River Basin. There was evidence of poverty and neglect? Actually, Your Honor, I think there was very little discussion whatsoever. There was some. Of poverty. But I don't think that there was evidence of neglect in the record before the trial court. While counsel did make a few allegations regarding the what he called the difficult family history, and also that he had an unstable family life. And he talked some about in both his sentencing memorandum and in the letters from Scherz's family members that he had had a difficult relationship with his mother and his father for different reasons. There certainly was nothing even close to the extent of evidence regarding the conditions that Mr. Scherz grew up in. There were no ñ nothing at all he ever requested about Mr. Scherz's childhood medical records, his ñ the files from his previous incarcerations when he was in juvenile court, the majority of his school records. He didn't interview ñ aside from Mr. Scherz's mother and his aunt who wrote a letter and then testified, trial counsel didn't speak to any other member of Mr. Scherz's family. And who would those members have been? He has three siblings. He had ñ his father was still alive at the time. There are other aunts that are still around. I mean, I think that the evidence is clear that at the time ñ The father abandoned him, right, when he was a kid? The father was in and out. I think that he didn't always live with them because initially Scherz's grandfather had problems with the relationship between Scherz's father and Scherz's mother, considering the fact that Scherz's mother was only 14 at the time she entered into the relationship with, who was essentially a paternal cousin. And so that certainly caused ñ I mean, there was evidence that he grew up in an alcoholic environment, right? Excuse me, Your Honor? There was evidence presented that he grew up in an alcoholic environment? Yes. But certainly, again, not at all to the extent that, you know, really what this crime was about was the intersection of alcoholism, drug abuse and violence. And I think when you look back at Mr. Scherz's childhood, there is very clear evidence that that's how he grew up. Everything that happened that surrounded him was ñ involved alcohol and violence. And I think that that is very important mitigation because the State argues so often that mitigation isn't quite as ñ But there's a difference between having something not presented to the jury at all and having, sort of, more evidence. There was evidence of alcoholism. There was evidence of poverty. There was evidence of abuse. There was evidence of dysfunctional family. All those things were presented to the ñ I guess this was not a jury. This was not a jury. It was the judge. The sentencing judge. All of those things were presented, right? I think that some of those facts were presented ñ The fact that he had his first experience with heroin at the age of 12 was presented? Some of that information was in Dr. Tatro's report, yes.  But just because counsel did some things, just because there was some bare evidence presented in front of the ñ in front of the sentencing body, that's not enough to satisfy Strickland or, you know, to constitute effective representation of counsel under these circumstances when you really have to look at the difference between what was presented and what could have been presented. And I think ñ Well, what we have to determine is whether the State court was unreasonable in applying Strickland, right? So the question is not whether we think Strickland was complied with. The question is whether we think the Arizona Supreme Court was unreasonable in saying there was no ñ that these things were adequately presented. That is correct as to a portion of this claim, Judge, because the district court did a fairly unusual bifurcated review of this claim because a great deal of additional evidence was presented in a third PCR in this case that was denied by an ambiguous procedural bar. And so accordingly, all that additional evidence has been reviewed de novo. So even ñ Why? Why? Even assuming you could do that, and I ñ you know, it's a little bit treacherous on how you get from two to three and then back to your certified claims and all  But let's just assume it's all on the table. Would you respond to the issue of prejudice? Because I think in the end, the question I have is whether all the things Judge Kuczynski mentioned that are in the record, and then you mentioned some that weren't, is a question more of degree, although there may be some abuse by an aunt and some other things. So at the end of the day, if you got all the way to the end, why wouldn't the lack of prejudice be fatal to the claim? Your Honor, I think that there is ample additional evidence to indicate prejudice here. I think that even though there ñ some of the evidence, additional evidence that was developed in the second and third PCR did relate back to things that had been alleged in front of the trial court. Many of the things did not. Again, the various allegations of sexual abuse, the information about the severe physical abuse Mr. Scherz suffered at the hands of his parents, the head injury he had at age 7, the ñ again, the details of all the poverty and neglect that he suffered, and the history and the effect of alcoholism in his family. So what evidence was of sexual abuse? There is evidence ñ I'll tell you what page it's on, the ERs. ER 607, 602, and 594 through 95. It's a ñ it's discussion by his family members regarding the sexual abuse by a priest at the mission school on the reservation that Mr. Scherz attended. Was there ñ was that a ñ there was anything beyond suspicion on that? I think the family thinks it's more than suspicion, but it is ñ it's the family's observation of serious changes in behavior after ñ at a certain point when Mr. Scherz was going to the school. But that is all that's in the record at this point. It sounds less than suspicion, more like speculation. That might be a fair characterization. I think that the change in his behavior was something that was very clear to them, that he ñ after he'd been going to the school for a specific period of time, he began having nightmares. There were certain areas of the school he was scared to go to. He was scared to be alone with a certain priest. And the family has also discussed the fact that this was something that ñ But there's no evidence at all for sexual abuse. There's nothing from your client saying he was sexually abused. There's nothing from the school. There's nothing at all. This is a speculation by the family that this might be a cause, might have been a cause of what they perceive to be a change in behavior at an age when serious changes in behavior because of a variety of factors. They're growing up. They're going through adolescence. They could have ñ be dealing with bullies at school. You know, those things that happen that cause people to change behavior. I mean, there's really no evidence at all, right? Well, I think, Judge, even if you say that the evidence of sexual abuse isn't sufficient to support that claim ñ No, but I'm saying more. I'm saying there is no evidence of sexual abuse. There's no recipient witness. There's no doctor. There's no psychiatrist. There's no one who testified to anything substantiating. They're just sort of guessing that maybe there was sexual abuse. Well, two points ñ I mean, was there anything more than that? Well, two points. First of all, at no point during either the State court or the district court proceedings in this case was Mr. Scherz's counsel given any kind of funding to develop additional evidence, to hire mental health experts, to do any of those things. And he requested an evidentiary hearing on these claims in the third PCR. He couldn't get an affidavit from his client saying he was sexually abused? I didn't represent Mr. Scherz at the time. I'm not sure why. Well, you're saying he didn't have the funding. Certainly. I mean, if there was sexual abuse, presumably a client was present, right? It's hard to have sexual abuse without the victim actually participating or, you know, being part of it. So he would have been able to present something. At least you could have presented something that would have been evidence from him saying he was sexually abused. But we didn't have that. I think, Judge, even if you take away the allegation of sexual abuse, pretend like that wasn't there, we still have reports from his family. I don't have any trouble pretending it wasn't there. I have no trouble at all. But you mentioned it. No. I mean, you sort of throw stuff out as if it were a fact. But there's a lot of stuff in your petition that isn't fact. Sexual abuse is just not a fact at all. There's no evidence for it whatsoever. There are other things that are also sort of thrown out that you claim exist, but for which there's no evidence at all. Again, Your Honor, the reason why there isn't evidence. I mean, just think about neurotoxins because his father worked with pesticides. There's no evidence of that at all, nothing. There is evidence in the record about the fact that parts of the reservation have been designated as a Superfund site. But, again, all funding has been denied in this case. And prior Habeas Counsel, who was a lawyer appointed under the CJA Act, and so didn't have funding available on her own to go ahead and get things done, you know, like mental health evaluations, as I point out in the brief, she moved probably five or six times at various points in the proceedings in the district court and when she was in state court for funding to develop these claims. And he had funding for a psychiatrist? She was never given funding for any mental health expert at all. What does the state court mean when it says, when his mental health condition was issued as a possible source of mitigation for sentencing, he was authorized to retain a psychiatrist at county expense to assist him, and he did? I'm sorry, Your Honor. I didn't mean to misspeak, but that was at trial. I meant in the post-conviction or Habeas proceedings. Okay. I just wanted to make sure I understood. No, absolutely. I'm sorry for any confusion. That was my fault. He was given funding to hire a defense expert to present mitigation evidence at sentencing. But as we point out in the brief, unfortunately, that expert was given nothing. I mean, no health records. No, he didn't do any interviews of the family members. That report is based solely on Mr. Scherz's self-report. And I think even if you look at Judge Martone's opinion in this case from the Arizona Supreme Court, Judge Martone points out that Dr. Tetrault's report ultimately was more aggravating than it was mitigating. And an interesting fact about that is one of the additional pieces of mitigation. I mean, that sometimes happens with experts. You hire an expert, and they turn out to be more aggravating. You know, they don't help you. They wind up helping the other side. Absolutely. So it's one of the dangers of hiring experts. That absolutely does happen. But in this case, I think we have a pretty clear indication that that shouldn't have happened, because some of the evidence that was proffered, again, during the third PCR and in the district court in this case, was the records from Mr. Scherz's juvenile incarceration at Adobe Mountain. And Dr. Tetrault, who is the same doctor that the defense retained to present mitigation evidence, had evaluated Mr. Scherz when he had been adjudicated delinquent and was incarcerated in a juvenile facility. And apparently no one ever realized that the same doctor had done a report of Mr. Scherz a few years before. And I think there's a very marked difference in Dr. Tetrault's view of who Mr. Scherz was and how he became who he was. And it had, trial counsel had that, those records that indicated, you know, the staff interviews that Dr. Tetrault did of the people who had been around Mr. Scherz while he was in the juvenile incarceration or when he was in rehab at the age of 13. Had he had all of those factors, when he did have it during the time of Mr. Scherz's juvenile proceedings. When did this trial take place? In 1990, Your Honor. When he did have that, his report was much more favorable, in very many ways, much more favorable to Mr. Scherz. And also outlined at the end five ways that he thought Mr. Scherz's parents and the system could help Mr. Scherz to get his life on the right path due to the terrible abuse and neglect and the drug and alcohol addiction that he already very firmly had when he was still prior to the age of 18. And none of those things happened. And had Dr. Tetrault. Well, the evidence of alcohol and drug abuse was before the sentencing, Judge, right? To some extent, it was, yes. Well, you say to some extent. I mean, you think saying it twice or three times makes it strong? Judge, I don't think it's the same thing over and over again. I think if you look at this Court's decisions in Correll and Lambright, if you look at the United States Supreme Court decisions in Wiggins and Rompia, in all those cases, counsel did something. You know, counsel, I think in Rompia, counsel called five or six witnesses and had three mental health experts, and still the United States Supreme Court found ineffective assistance of counsel. You don't, you can't. That's what happened with Penholster, which is a more recent case. Penholster absolutely is a more recent case, but in Penholster, the additional evidence that was proffered was not before the State court. And in this case, the part of the claim that the district court reviewed was evidence that was reviewed de novo. So it's not covered under the district court. Could I ask you about that? Because I am maybe confused or at least have questions about the procedural situation. Absolutely. It seemed to me that in the second petition, which was on the merits, there's the failure to investigate claim, correct? Yes. So what's not clear to me is whether that gets collapsed, in effect, by you, certainly on this review, with the failure to prepare the expert. Because in the third petition, they actually addressed directly the TATRO, you know, failure to prepare. But it also seemed that in the second petition, it was collapsed into one thing, and in this Court, you collapse it into one thing. So aren't we then stuck with looking at just the second petition, and while the district court undertook a very noble effort, there was no need to do that in light of that? I'm trying to think of where to start, because I agree that this is a very complicated case procedurally. The district court found that while this claim had been raised in the second PCR and decided on the merits by the trial court judge, that when it was raised again with the benefit of abundant amount of additional evidence in the third PCR, that the trial court had dismissed it in that petition, but with an ambiguous procedural ruling, because the trial court in this case did not differentiate between when the claim was dismissed as to whether it was dismissed because it was waived or it was dismissed because it had already been ruled on on the merits. And the law of the circuit is clear that when a claim is dismissed by an ambiguous procedural claim, that it's not precluded from Federal review and that you get de novo review by the Federal court. But they actually did address TATRO on the merits in the third petition, right? As a separate claim? Yes. Yes, I believe so. But now the claim you're up here on is failure to investigate. And so there TATRO turns out to be a second claim. That's how it was raised and addressed. But you're only here, at least on the certified. And even the uncertified doesn't loop in TATRO. No. So why are we looking at the TATRO claim? Could you explain that more precisely? Yes, Judge. You're correct that Dr. TATRO was part of this claim when raised in the second PCR. And it was raised by prior habeas counsel as a separate claim in the third PCR. And when it went to the district court, there was quite a bit of back and forth as to whether or not that was an additional claim or if it was, in fact, subsumed in the failure to investigate and present mitigating evidence that were before this Court on right now. And when we discussed it in the opening brief, I think I talk about this a bit in the reply brief, that the district court did not certify it as a separate claim, but the district court spent considerable period of time in its discussion of the IAC claim talking about Dr. TATRO's report and what was available in it. So in rebuttal to the findings that the district court made on that, we discussed the flaws in relying on Dr. TATRO. And it seemed to me your separate claim was really that they didn't prepare him, not what was sort of in his report. And that's like a different claim, it seemed to me. I think it was raised as a different claim in the third PCR, Your Honor. Thank you. I'm sorry. Thank you. Thank you. We'll hear from the State. May it please the Court. I'm John Todd. I represent the State of Arizona in this matter. The State's position is that Penholster controls, dictates the outcome of this case, and that for the reason Judge McEwen said, the district court went through extra work that it need not have done under Penholster. Specifically, footnote 11 in Penholster talks about the situation where we, where Schurz is claiming what Penholster did, that these new facts alleged in the district court that were never fairly presented to the State court somehow are part of the same claim. And so this is a typical case of habeas sandbagging, where you present a portion of the claim to the State court, get a ruling, and then you bolster that in Federal court. And it doesn't apply to all claims. It doesn't apply to the A claim, for example. Say again? It doesn't apply to the A claim, does it? Oh, the Penholster? Yes. Oh, no, no. It doesn't control the A. So it doesn't control everything, right? No, no. I'm sorry. Okay. Sure. I should have clarified. I'm speaking only of the certified issue that it clearly controls. Okay. And it presents an opportunity for this Court to tidy up the Strickland cases, case law before the Court. I mean, just the citation to Correll and Lambright, those cases were decided long before the AEDPA. I mean, they were maybe decided after the AEDPA, but they are not AEDPA cases. And certainly Penholster even changed the landscape even more, as did Richter. So this case is owed, as the Court's well aware, double deference. You had the trial court who actually heard the trial, decided the second PCR, and in the second PCR, post-conviction relief proceeding, the court was, in fact, one of the allegations was that he was sexually abused by a priest. And the court found that there was no Strickland error. In order to have Strickland error, you would have to, the defense attorney would have had to have been incompetent as far as the prevailing norms at that time. And the trial judge who saw the attorney, who this Court would owe deference to, said he was above average in his performance in terms of mitigation. So then on top of that deference owed under Strickland, where we don't use hindsight, we don't judge by today's standard, as we don't have a set of rules that every attorney has to go through. And it appears that some of the Ninth Circuit cases create certain rules that are reasonable, but that's not what Strickland says. Justice O'Connor never set forth a bunch of rules, never said that you had to do this. In fact, in Wiggins, when so far as said there could be cases where it would be reasonable for the attorney not to present any evidence. Also, in Strickland itself, somehow there's this concept that you always have to have medical, mental evaluations, yet, and that was the claim in Strickland. And the Court found no, under the facts and circumstances of that case, even though character evidence was readily available and even though he could have gotten mental health experts, there was no violation, because under the facts and circumstances of the case, what he did was reasonable at the time. Could you let me know your position on whether you think we're looking at the second petition or the third petition? I believe under Penholster, you're looking at strictly the second petition. Okay. My question then would be, did you waive the argument that we shouldn't be looking at the third petition? Certainly did not in the habeas proceedings. I mean, it was the State's position that should not consider anything beyond the second petition, and that was before Penholster. I'm sorry. Who should? The district court? Pardon? You say it was the State's position that should not be considered. You left out a referent there. Who shouldn't consider it? That the district court should. So this was a position you took in the district court? Yes, Your Honor. And it's in the district court papers? It is. What about here? In the supplemental brief, when we were asked to apply Penholster. Right. But that was really more to the Aki or Ake claim. Yeah. So I'm looking. I'm trying to – that's what I'm trying to figure out with respect to ineffective assistance of counsel on appeal. It didn't seem to me that you made that argument. But maybe you can point me in your brief that I'm missing something. I did not author that particular brief. Well, but you're defending it. Oh, yes. Oh, yes. I'm not backing away from that. But to the extent that Penholster changed the law. No, but that, you see, Penholster might change what we look at. But if you waived whether we should be looking at the third petition, then it would seem to me we would look at the third petition, that there wasn't a decision on the merits. Therefore, it would be a de novo look at what they presented. It may then include Penholster, meaning our de novo look at everything up through the third petition. So it would make a difference. I don't think just the Penholster flag gets you home. Well, I'm not sure if I'm tracking. It seems to me that we won in the district court. The district court, in our view, did more than they needed to, and we still won. They said that all this new additional information was didn't amount to. Right. But you just got done telling us we shouldn't look at that. So I'm just trying to figure out what the State's position is. If you're saying, look, just let's just look at everything anyway because, quote, we won, that's one position. But if you're saying we should only look at the evidence in the record, my question is, do we look at the second petition or, in fact, because you didn't make an argument that we shouldn't look at the third, we should also look at everything that was there on the third? I mean, that's not – I didn't create this maze that we're in, so. I understand, Your Honor. And I don't believe in the – in our answering brief, this was raised as a second issue or as an issue. So in that case, we should look at everything that – at least we should look de novo at the time of the third petition? I don't believe so. I believe that this Court is required under Penholster to look only at the second petition – the second post-conviction relief proceeding, regardless of the State's argument that you're – this Court's now bound for multiple reasons of looking at simply the holding, the principle of Penholster, where you don't allow sandbagging in a Federal habeas proceeding. So if I look at the third petition, if I either feel like you've waived it or I believe I should look at it, do I look at it de novo, given the procedural background thereof? If you feel that you're permitted under law to look at it, yes, you'd look at it de novo. Well, didn't the Supreme Court say in Richter that when a State court has summarily denied a claim, a habeas court must determine what arguments or theories supported or could have supported the State court decision? They certainly did that in a summarily denial of a claim. Here, there was a procedural bar of the claim. The trial court said the claim was procedurally barred. It was precluded under Arizona State law. So therefore – Well, I understand that. Without any reasoned decision, just done, and so when there wasn't any reasoned decision and it was just done, am I not looking to see what they could have said to support them, and therefore that's the way I review it, or am I just having it de novo? Your Honor, I think the – that Richter, in their telling the lower courts that when there's a summary denial, that you have to look at all possible reasonable answers for that denial. I would think that that – that reasoning would apply to even when there's an opinion that sets forth certain reasons. If under the Supreme Court precedent there is a reasonable grounds for supporting it, then the obligation of this Court is to support that State court decision. But would we look – would we then look at everything in the State court record up through the third petition then? Well, you look at the ruling, the merits ruling. And on this issue, the last merits ruling in the State record was the second PCR. Is that? Well, I mean, it's odd because we have the second one, and if we just had the second one, we'd know exactly what we had. Then we get this a little bit odd third one, and then following up on Judge Smith, on that one, since it's not clear under what basis it was dismissed, it seemed to me we look de novo. But de novo doesn't necessarily mean new evidence. In other words, I think that's where post-pinholster maybe courts haven't had occasion as much to consider that. But so my question is, if we looked at the third one, and if because of Richter and other cases we were to look at it de novo, do we still look at just the State court record, or do we, as I believe Mr. Church's counsel would say, we could go to an expanded record? I'm not sure, Your Honor, if I'm tracking. But I believe that you cannot expand the record in Federal court beyond the merits decision in State court under pinholster. When pinholster left some holes open, you're just saying none of those apply here? Yes, Your Honor. Yes. And between, you know, if I were you, between the de novo review and the Richter review, my position is you should use the Richter review. Any other questions? Okay. Anything further? Anything further from the Court? No. Okay. Thank you. Thank you. We're out of time. We'll give you two minutes for rebuttal if you'd like to take it. Thank you very much, Chief Judge Kuczynski. I'd just make a very quick point. I'd like to clarify pinholster and Richter's application to this case. We do not disagree with the holdings of Richter and pinholster. The difference here is there was no sandbagging that occurred here. The district court allowed Mr. Scherz's previous habeas counsel to return to State court and file an additional postconviction petition. The counsel did so. And there's nothing in Richter or pinholster that talks about procedural default, procedural bars, preclusion. It's not even remotely an issue in any of those cases. Those cases dealt with denials on the merits of claims that had been raised in State court. And the difference here is that under any analysis that would govern in a normal case, when this claim was raised in the third PCR with all the additional evidence raised in the State court before the State court attached to the PCR petition that was filed, the district or the State court denied it on a procedural bar that was not adequate to preclude Federal review of that claim. That is well-settled law governing preclusion and procedural default. Why was it not adequate? Excuse me? Why was it not adequate, you say? Because it did not clearly and unambiguously indicate the ground for preclusion. And again, there's an Arizona case from this court, Ceja v. Stewart, that I cite in the brief, that is directly on point. It is an example of exactly the same situation where it was denied and it wasn't clear if it was denied because it was waived or it was denied because it had been previously waived. So you're really saying that here the district court did what it should do, which is let the State court take the first crack at that evidence. Absolutely. And there was additional evidence that wasn't presented in State court that was proffered into the district court, but the district court did not consider it. They denied the motions for evidentiary development. As to that, it's not included in the decision on the merits by the district court, and we did not argue that additional evidence in the brief. And Penholster specifically talks about new evidence brought into Federal court that was never before the State court. The State court had the opportunity here to rule on these claims or to properly find it precluded using a nonambiguous procedural ruling, and the State court didn't do so. And that cannot be credited to Mr. Scherz. Mr. Scherz went back to State court with this evidence. So there's nothing in Penholster that precludes review of it. And finally, as to the Richter question. But you agree that if we find that the preclusion, the State court's preclusion was adequate, then the evidence doesn't come in? If the court, yes, Your Honor. If the court disagreed with Seha, then, and found that that was an adequate procedural bar, then, yes, I would say that the evidence wouldn't come in. It would be limited to the record before the second PCR. But, again, I think that's a very well-established precedence that's applied very often in Federal habeas cases, the need for an unambiguous procedural bar to preclude Federal review. And as far as the Richter question, Richter, again, was a summary denial on the merits of the claim. And in that case, the United States Supreme Court has said that this Court and counsel are required to argue, the Court is required to certify that there is no reasonable ground to support that merits decision. Richter has nothing to do with a procedural bar, nothing to do with procedural default or preclusion. That's a very different question that throughout habeas law, unchanged by the anti-terrorism Can you explain to me, just to make sure I have focus on it, what is it about the denial of the third petition that you find inadequate? Oh, let me grab it and I can tell you exactly. It's ER-153. Okay. And the specific page is, if you look at 155, ER-155. Okay. This claim in the third PCR proceeding was Claim 9. And the heading right above that claim says, The Court finds that the following claims are precluded because they either were or could have been raised in the prior PCR proceedings. And if a claim was precluded because it was raised, that is one subsection of Rule 32.2a. And if it should have been raised and was not and is thus waived, that's a different subsection. And Seha is clear that the difference between Rule 32.2a.2 and Rule 32.2a.3 Sorry, that's very confusing. Combining the two of those without indicating which ground the claim is precluded based upon is inadequate to preclude Federal review of that claim. Could I just ask one more question? What in the world did they mean on page 154, which is the page before, when they actually dealt with this failure to prepare Dr. Tetreault and the ineffective assistance of counsel of the trial attorney about more mitigating evidence? It's sort of like it seemed like they give it and they take it away. They decided on the merits and then they drop it in their list on page 155. I think the reason why it gets confusing is because, again, as judges, you pointed out during my initial presentation, it was the failure to prepare Dr. Tetreault was raised as a standalone claim in the third PCR, even though it had not been raised as such in the prior habeas proceedings. And the way that it was argued was that I think counsel had tried to argue an exception to the preclusion rules as to that claim, that it was newly discovered evidence falling under 32.1h. And here this is where the trial court says, as to that claim, that it did not constitute newly discovered evidence so as to qualify for an exception to the preclusion rules. But nonetheless, they reviewed the file, et cetera, and they didn't think? Right, as to that claim. As to that part of the claim. Exactly. Well, again, it was a standalone claim at that point, but, yeah, on that point. Exactly, Your Honor. Okay. There's no further. Thank you. Thank you. Thank you. Your Honor, I have no file to review. I did have some time, but I can take that and help. Could I have the police and state's position on this issue? On the Statehouse issue? Go ahead. Just take a minute. We're talking about two different things. Under Ninth Circuit law, and it's an en banc decision, that if the State court gives a ruling, such as the State court did in this case, that the claim either was or could have been considered, the Ninth Circuit does not consider that a bar. And that's why the district court, under prior law, considered this evidence or this information. The — but under Pinholster, this is no different than Pinholster. Sure, Pinholster's development of the evidence was in an evidentiary hearing in Federal court, never presented to the case, never presented — the two experts were never offered in the State of California. But the legal effect is the same. When Shures went back to State court on a claim that he was going to raise a ring claims, and the court ruled, as far as Ninth Circuit law, it was not a procedural ruling on the ineffective assistance claim, nevertheless, under State law, the court could not fairly consider that information. Under State law, it was barred for considering it. So that's no different than the evidentiary hearing in State — in Federal court in Pinholster, where the State, again, legally, in Pinholster factually, didn't have an opportunity to consider the evidence. Thank you, Your Honor. Any questions? Roberts. Okay. Thank you. The case is now in a stand-to-move. We are adjourned.
judges: Kozinski, McKeown, Smith